### BRYANT ELECTRIC CO. v. DAVID KILLOCH CO.

(District Court, S. D. New York. July 17, 1912.)

No. 5—93.

PATENTS (§ 328*) — VALIDITY AND INFRINGEMENT — INCANDESCENT LAMP SOCKET.

    The Seeley reissue patent, No. 12,757 (original No. 839,655), for an incandescent lamp socket, discloses invention and is valid; also, *held* infringed.

In Equity. Suit by the Bryant Electric Company against the David Killoch Company. On final hearing. Decree for complainant.

Hubert Howson, for complainant.

Francis C. Lowthorp, for defendant.

PLATT, District Judge. Defendant is charged with infringement of claims 1, 2, and 3 of reissued patent No. 12,757, dated March 3, 1908, granted to complainant as assignee of F. E. Seeley, for incan-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

descent lamp socket. If Seeley was within the law when he obtained the reissue, so as to include claims 1 and 2, which he swore were omitted by inadvertence, and if said claims express an inventive thought, the defendant's structure plainly infringes those claims. It seems too obvious to warrant argument that the reissued claims are for the same invention as was described and attempted to be claimed in the original patent. The application for reissue was seasonably filed, and no intervening rights have been affected. The principles sanctioned in Topliff v. Topliff, 145 U. S. 156, 170, 12 Sup. Ct. 825, 36 L. Ed. 658, warrant the granting of the reissue. Is the patentee entitled to the benefit of an inventive thought when he laid bare to the public what he had done, and demanded the protection sought in claims 1 and 2 of the reissue?

A study of the prior art satisfies me that Seeley was the first to get away from every vestige of the old yoke type of attachment, and to show the world how to form in the shell or cap the "angled projections 4," performing the threefold function of automatically latching, securing against endwise detachment and preventing rotation. The earlier Goodridge patent, No. 837,055, was edging away from the old yoke type, but it had a yoke worked by pins, and the simultaneous use of the thumb and two fingers in detaching was a cumbrous thing. Nothing which I have found went any further away from the old yoke type than the Goodridge patent.

The defendant's experts think that with the light shed by the earlier attempts to escape the yoke type, a mechanic could have taken the step which Seeley took. That judicial minds differ on the question of invention is shown by hundreds of reported cases. Speaking for myself, I cannot escape the conviction that the inventive thought was present in Seeley's mind. I am not much impressed by the evidence as to large sales of the patented structure by the General Electric Company, who market the product under license. The trouble with it is that most of the product marketed, not only has protection under the Seeley patent, but also under the multicatch patent of Goodridge. The latter strikes me as much more advantageous, and the salableness which it gives to the product may render the Seeley patented feature negligible.

The only question which had bothered me at all is as to whether the defendant infringes claim 3 of the reissue. If we are to be bound by the "letter which killeth," he does not infringe. If we have in our hearts a trace of kindly feeling for the "step in advance" which Seeley took, infringement is shown. I find all the elements and features of claim 3 in defendant's socket, co-operating to produce the same result with nothing added, nothing omitted, and that, by an act of legerdemain, easily detected, the defendant's structure calmly appropriates the substance of claim 3.

Let a decree be entered, finding infringement of the claims at issue, and for injunction and accounting.